WOODARD, Judge.
Plaintiff teacher appeals the judgment of trial court dismissing his claim against defendant school board for wrongful termination under 42 U.S.C. § 1983. We reverse.
FACTS
Plaintiff, Amos Graham (Graham), was a certified math and science teacher in the St. Landry Parish school system for 17 years, from 1972 until 1989. Graham took a sabbatical leave for the 1988-1989 school year, and in 1989 applied for, and was granted, a disability retirement. In 1990, after a medical examination, Graham was certified as able to return to teaching. The defendant, St. Landry Parish School Board (the Board), rehired Graham for the 1990-1991 school year to teach at Plaisance High School, substituting for a teacher who was on sabbatical leave for that year. At the end of the 1990-1991 school year, Graham applied for a permanent teaching position with the Board for the 1991-1992 school year but was not re-hired. Graham then |2sought employment, and was employed, in the Lafayette Parish School system for the 1991-1992 school year. He continues to teach there.
In August 1992, Graham filed suit against the Board, alleging violations of his constitutional rights under Articles 2 and 3 of the Louisiana Constitution and 42 U.S.C. §§ 1981 and 1983. He asserts that under School Board policy, certified teachers are to receive preference over non-certified teachers for teaching positions. Graham asserts that in the 1991-1992 school year the Board employed non-certified teachers in positions for which he, a certified teacher, was qualified. A bench trial was held on February 21, *598 1996, and a judgment was rendered on April 10, 1996. In its written reasons for judgment, the trial court found that Graham had failed to meet his burden of showing that the decision not to hire him was the product of an official policy of the Board. It is from this decision that Graham appeals.
ASSIGNMENTS OF ERROR
Graham asserts the following assignments of error:
(1) The trial court erred in ruling that Appellant did not have a tort claim in this case.
(2) What damages did Appellant sustain as a result of Defendant’s fault.
(3) The trial court erred in finding that Appellant did not have a cause of action under 42 U.S.C. 1983.
(4) Whether Appellant is entitled to damages and attorney’s fees.
LAW
Tort Claim Under State Law
In his first assignment of error, Graham asserts that the trial court erred in ruling that he did not have a tort claim in this case. In support of this assertion, Graham makes two arguments. First, he argues that in failing to notify him by letter that he would not be re-hired for the 1991-1992 school year, the Board violated its own policies regarding notification of separation of teachers from employment. Second, Graham argues that the Board, in failing to hire him for the 1991-1992 Igschool year, violated its own policy of employing non-certified teachers only if there were no certified teachers available.
Graham correctly states the policies of the Board regarding hiring and notification. However, even if we find that he has a valid tort claim, he requests a remedy to which he has no right; namely, to choose the school at which he would like to work. It was established at trial that teachers in St. Landry Parish have not been entitled to choose their schools. As Graham himself testified, teachers in St. Landry Parish are not employed to work in any particular school. Rather, they are employed by the Board and may be assigned to any school in the parish. At trial, Graham testified that he would return to employment with the Board only if he were assigned to work at one of three schools in Eunice. Graham further testified that the Board had offered him employment for the 1992-1993 school year in St. Landry Parish, but he declined the job because it was not at a school in Eunice. The trial court found that Graham no longer requested to be restored to his former employment, but rather requested to be restored to employment at a school of his choosing. Since this is not a remedy to which Graham has a right, the trial court considered Graham’s request to be “restored to his former employment within the St. Landry Parish school system” as abandoned. Based upon the facts and the law before us, we cannot say that this was manifestly erroneous or an abuse of discretion. As such, this assignment has no merit.
Cause of Action Under 42 U.S.C. § 1983
In his second assignment, Graham asserts that the trial court erred in finding that he did not have a cause of action under 42 U.S.C. § 1983. Specifically, Graham asserts that his right to equal protection was violated by the Board’s failure to hire him when teaching positions within the school system were staffed with non-certified teachers. In addition, Graham asserts that the trial court erred in finding that the Board’s actions did not reflect its official policy.
42 U.S.C. § 1983 reads in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or ^immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...
In interpreting this statute, the Supreme Court has held that its language “cannot easily be read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relation *599 ship with a tortfeasor.” Monell v. New York City Dep’t of Social Services, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). For example, in City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Court found that an unjustified shooting by a police officer could not, without more, be thought to result from official policy. The police officer was not a policy-making official, and his actions were not taken pursuant to any policy established by the city. Thus, the city was not liable. Likewise, in City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Court held that the city could not be held liable for the adverse personnel decisions taken by the plaintiffs supervisors because those decisions were not made by individuals with final, policymaking authority, nor were they made pursuant to a policy adopted by those with final, policy-making authority. Finally, in its written reasons for judgment, the trial court cites Guidry v. Broussard, 897 F.2d 181 (5th Cir.1990) for the proposition that “[ljocal government entities are only liable under § 1983 for acts of local officials pursuant to official government policy.” In Guidry, a. local school principal censored a valedictory speech to be given by a student. The student filed suit against the school board under § 1983, claiming an infringement of her First Amendment right to free speech. In its holding, the court found that the actions taken by the principal were not representative of the official policy of the board.
In all of the above cited cases, the court was faced with an action by a subordinate of the final, policy-making body which was not in accordance with the policies of that body. The question presented in this case, however, is whether, and if so, when, may a final, policy-making body be found to have acted contrary to the very policies which they themselves adopt?
The Supreme Court has held that, while Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others, it never questioned its power to impose liability on municipalities for their own illegal acts. Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 5(1986) (citing Monell, 436 U.S. at 665-683, 98 S.Ct. at 2022-2032). The Court further stated that ‘Monell reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts ‘of the municipality’ that is, acts which the municipality has officially sanctioned or ordered.” Id. at 480, 106 S.Ct. at 1298.
Thus, in order to impose liability on a municipality under § 1983, a plaintiff must show that the body “caused a constitutional tort through ‘a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body’s officers.’ ” Praprotnik, 485 U.S. at 122, 108 S.Ct. at 923. The Court in Praprotnik went on to state several “guiding principles” for determining when a decision on a single occasion may be enough to establish an unconstitutional municipal policy:
First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, “that is, acts which the municipality has officially sanctioned or ordered.” Second, only those municipal officers who have “final policy making authority” may by their actions subject the government to § 1983 liability. Third, whether a particular official had “final policy making authority” is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city’s business.
Id. at 123, 108 S.Ct. at 924 (citations omitted).
The Court further stated that the fourth requirement, that the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city’s business, “could be inferred from a single decision.” Id. The Court explained its reasoning for this decision in Pembaur, finding that:
[A] government frequently chooses a course of action tailored to a particular situation and not intended to control deci *600 sions in later situations. If the decision to adopt that particular course of action is properly made by that government’s authorized decision makers, it surely represents an act of official government “policy” as that term is commonly understood. More importantly, where action is directed by those who establish government policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.
6Pembaur, 475 U.S. at 481, 106 S.Ct. at 1299. In discussing whether a single decision may establish municipal liability, the court held that:
not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability only attaches where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official— even a policy making official — has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion... .The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.
Id. at 482-483, 106 S.Ct. at 1299-1300.
Thus, the Court’s holdings in Pemb-aur and Praprotnik establish that a municipality may be found liable under § 1983 in either one of two scenarios. First, a municipality may be found liable for the actions of one of its employees if the employee commits a constitutional tort, and his actions may be said to represent a policy adopted by one with final policy-making authority. Second, actions taken by policymakers who are responsible for establishing final government policy respecting such activity, even if such action consists of a single decision and is not intended to control decisions in later situations, may result in municipal liability.. Thus, while those policymakers without final policy-making authority cannot, through their actions and decisions, subject a municipality to liability, those with final policymaking authority can. The reasoning for the court’s holdings concerning this latter scenario are obvious. Municipal officials should not be allowed to make decisions contrary to their own established policies, and then escape liability by asserting that their actions are inconsistent with the policies they themselves promulgate.
In the present case, the trial court found that the decision to hire non-certified teachers, instead of Graham, was not the “official policy” of the Board. In its written reasons for judgment, the court stated that:
[P]laintiff has faded to establish that his failure to be rehired into the St. Landry parish school system was a violation of § 1983, and he also faded to establish that any action or inaction resulting in his fad-ure to be rehired was the product of ‘official policy’ of the School Board.
7At trial, Graham’s testimony, along with that of Joe Tuminedo, the Director of Personnel for the Board, established that, under rules promulgated by the Board, uncertified teachers are to be employed only when there are no certified teachers avadable for those positions. Under La.R.S. 17:81, the state legislature has delegated to the various city and parish school boards the final authority to determine “the number of teachers to be employed, and select such teachers from nominations made by the city or parish superintendent.” Mr. Tuminedo stated at trial that the principals of the various schools make recommendations of the persons to be hired by the Board and that the Board works “very closely with the principal.” Whde the principals of the various schools make recommendations to the Board, the Board retains the power to make the final decision as to which teachers are hired. As the Supreme Court stated in Praprotnik, “when a subordinate’s decision is subject to review by the municipadty’s authorized podcymakers, they have retained the authority to measure the official’s conduct for conformance with their podcies.” Praprotnik, 485 U.S. at 127, 108 S.Ct. at 926. La.R.S. 17:81 clearly retains in the Board the authority not only to measure their subordinate’s conduct, but also final authority on which teachers are hired. Thus, *601 the decision not to hire Graham was an action by the Board and may be considered as a “policy” under § 1983. For these reasons, we find that the trial court erred in not finding that the Board’s failure to hire Graham was not in accordance with an “official policy” of the Board.
Property Interest in Employment
While we find that the Board’s failure to hire Graham was the product of an “official policy” of the Board, that does not end our analysis. In order for Graham to prevail on his § 1983 action, he must show that the actions of the Board deprived him of a property interest. Thus, we must further determine whether Graham had an “interest” in his further employment, that is, whether Graham was deprived of a federally protected right.
In Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court held that:
|8To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
Where a person has a property interest which is protected by the constitution, reb-anee on that interest must not be arbitrarily undermined. Id. “It is the purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.” Id. In determining what constitutes “due process,” the Supreme Court has held that:
The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to written notice of the charges against him, an explanation of the employer’s evidence, and an opportunity to present his side of the story.
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). In the present case, the Board argues that Graham had no legitimate expectation of continued employment. At the time of his termination, Graham was neither a probationary teacher nor a tenured teacher. The Board correctly argues that Graham was hired temporarily to fill a position made vacant while another teacher was on sabbatical leave. Because Graham knew that that teacher would be returning in a year, he could not have had an expectation that his employment in that position would be continued and, without such an expectation, he did not have a property interest sufficient to trigger the due process requirement of a hearing. While we find that Graham did not have an expectation in his continued employment in the particular position in which he was working in the 1990-1991 school year, whether Graham had a property interest in employment by the Board in general is another question.
We have already established that the legislature has delegated to the various school boards the authority to hire teachers and to promulgate rules and regulations governing their employment. One of the rules promulgated by the Board is that noncerti-fied teachers are only to be hired if no certified teachers are available. Thus, |9while Graham did not have an expectation that he would continue to be employed by the Board in the particular position in which he was working, he did have an expectation that he would be employed by the Board in a teaching position as long as there were positions which were not filled by certified teachers. At trial, it was established that, at the beginning of the 1991-1992 school year, Graham sought employment with the Board. It was further established that, for that school year, the Board hired non-certified teachers to fill those positions. In hiring non-certified teachers but not hiring Graham, a certified teacher, the Board deprived Graham of a property right to which he had a legitimate expectation. As such, the Board was required to afford him due process.
The Board argues that, even though Graham was not entitled to due process regarding his termination, such process was *602 provided. At trial, Tuminello stated that he had spoken with Graham on several occasions, and that each time, he had advised Graham that there were no jobs available. Tuminello further stated that Graham informed him, through both oral and written notice, that non-certified teachers were employed in positions which should be made available to him. The Board argues that Graham received notice, in that he was told he would not be hired for the 1991-1992 school year, and that he had an opportunity to respond, evidenced by his conversations and correspondence with Tuminello. We agree with the Board that the procedure it followed sufficiently protected Graham’s right to due process. However, this finding does not answer the question of whether the Board actually abused its discretion in refusing to employ Graham.
In Rubin v. Lafayette Parish School Bd., 93-473, p. 10 (La.App. 3 Cir. 12/14/94); 649 So.2d 1003, 1011, writ denied, 95-0845 (La.5/12/95); 654 So.2d 351, this court held that:
[T]he standard of review in tenure cases prevents appellate courts from conducting a de novo examination of the record evidence ... the standard for appellate review in tenure cases is limited to assessing whether a board had a “rational basis for the determination supported by substantial evidence.”
(Citations omitted.) In the present case, Mr. Tuminello stated that the Board based its decision not to re-hire Graham on the principal’s recommendation. He stated that | ipthe principal “was very pleased with the job his staff was doing and did not want to interrupt that at all.” In addition, when asked whether the Board was required to certify to the State Board of Education that there were no certified teachers available, Mr. Tuminello answered yes and admitted that the Board had erred in not hiring Graham. Even under the narrow standard of review utilized by the appellate courts, it cannot be said that these reasons support a finding that the Board had a “rational basis for the determination supported by substantial evidence.” As such, we find that the Board’s refusal to hire Graham was arbitrary and without a rational basis.
Damages
Because Graham’s second and fourth assignments both relate to essentially the same issue, that of damages, we shall address those assertions together. In his second assignment of error, Graham argues that, as a result of the Board’s action, he sustained psychological pain, anxiety and humiliation, and incurred expenses relating to travel to and from Lafayette. Furthermore, in his fourth assignment of error, Graham asserts that the trial court erred in not awarding punitive damages and attorney fees.
In cases such as the present one, the proper remedy would be reinstatement of employment and an award for back pay lost as a consequence of Graham’s termination. However, as we have already determined in Graham’s first assignment of error, his request to be reinstated to his former position is deemed abandoned. Furthermore, the evidence introduced at trial established that Graham has not sustained an economic loss related to his salary because he is making more money teaching in Lafayette than he did, or would have, in St. Landry Parish. The question before us, therefore, is whether Graham may recover those damages claimed, which are related neither to reinstatement nor to back pay.
Graham asserts that the trial court erred in not assessing punitive damages against the Board. It is well-settled law that an appellate court will not consider issues raised for the first time on appeal. Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104 (1959). Punitive damages were not claimed in Graham’s petition nor were they mentioned at trial. This assignment, therefore, is not properly before this court and has no merit.
11Graham further asserts that the trial court erred in not awarding him damages for psychological pain, anxiety, and humiliation in the amount of $60,000.00. The plaintiff has the burden of proving damages claimed by competent evidence. Lasha v. Olin Corp., 91-459 (La.App. 3 Cir. 3/2/94); 634 So.2d 1354. In the present case, Graham *603 presented no evidence in support of his assertion that he suffered pain, anxiety, or humiliation, and admitted that he had not seen a doctor for these injuries. Furthermore, there was no evidence presented as to the amount claimed for these alleged injuries. Based on the record before us, we cannot say that Graham has met his burden of proving these damages by competent evidence.
Additionally, he presented no evidence in support of his claim for mileage and travel expenses. In order to prevail on this claim, Graham must show that the expenses incurred were a proximate result of the Board’s failure to continue his employment. As has already been shown, teachers are not guaranteed positions in any particular school, much less a school closely located to their residence. It is possible that, had the Board continued to employ Graham, he would have been assigned to a school which necessitated traveling long distances. Furthermore, this claim, like the claim for pain, anxiety, or humiliation, was not supported by competent evidence. For example, in his calculations, Graham includes damages in the amount of $30.00 per hour for his driving time. No evidence was introduced to support this figure. As such, we cannot say that Graham has met his burden of proving that the Board’s actions were the proximate cause of these damages.
Finally, Graham asserts that he is entitled to attorney’s fees. 42 U.S.C. § 1988 authorizes reasonable attorney’s fees for the prevailing party in a § 1983 action. While such award is within the discretion of the court, the statute contemplates that a prevailing party be awarded attorney’s fees absent some special circumstance. However, in the present case, we find that such special circumstances exist; namely, while Graham succeeded in proving that the Board abused its power concerning his termination, we believe that his refusal of the relief requested, namely reinstatement, coupled with the fact that no other damage award is supported by the facts of this case, preclude an award of attorney’s fees. We, therefore, find this assertion of error is without merit.
| ^CONCLUSION
For the above cited reasons, the judgment of the trial court is reversed; however, no damages are awarded to plaintiff. Costs assessed to the defendant school board.
REVERSED.